Thank you. Good morning Mr. Sachs and may it please the court. With the court's permission I'd like to reserve two minutes for a rebuttal. When the police violate the Fourth and Fifth Amendments by unlawfully arresting a man in his underwear at his house, interrogating him without Miranda, and unlawfully seizing his property, they cannot simply wait eight months and then use the  investigatory encounter. Time alone is not enough to purge the taints. Rather, under this court's precedent in United States v. Washington, cited at page 18 of my opening brief, the government bears the burden of showing that the second confession was quote an unconstrained independent decision that was completely unrelated to the initial unlawful violation. That is not the case here and the district court erred in failing to suppress Mr. Bocharnikov's second statement. Counsel, I've got I've got a couple of just factual questions about this. So when the police show up at Bocharnikov's house, they talk to his wife, his wife gets him, comes out of the shower in his underwear. What did they ask him at that point? What did what did the police say to him before they handcuffed him? They told him that they were there to investigate the laser strike. It's unclear exactly what the words were, but he denied that he was involved in a laser strike, and at that point they handcuffed him. Okay, now did he say anything further to him? Didn't he say it was the kids? Yes, he did. He denied pointing the laser and said it was the kids. Okay, so so he admitted in effect that he admitted knowing something about the use of a laser. Yes, to the police. And did he say anything further that would have incriminated himself before they handcuffed him? No, he simply said it was the kids. Okay, so your your contention, I'm gonna ask the government. I want to make sure that I understand what where the Fourth Amendment violation is and where the Fifth Amendment violation is because those are two different things. So your contention is that the police did not have probable cause when they put the not just my contention. It's the government agrees with that. They did not have. Okay, I'm gonna I'm gonna ask him that question. I'm gonna parse that carefully. So there's a Fourth Amendment violation because they've seized him without probable cause. Yes. And then the Fifth Amendment violation occurs because once they've handcuffed him, they didn't give him Miranda and continued to question him after they handcuffed him. Correct. Okay, thank you. And, um, could could I ask one follow up factual question? Um, he said it was the kids. Did they know? Did the officers know at the time that there were not kids in the house? Didn't Didn't the wife say it's just me and my husband and in the house? That is true, although I don't think his statement can be taken to say that it was his kids, just that it was the kids in the neighborhood. I see. Okay. But they knew. But when the officers came, they knew that the laser had come from this house, right? They knew that there were three people near the laser, and that he had come from that house. What they knew that's the part about three people near the laser. Sorry. What was the police used an infrared camera? And with the infrared camera, they could tell that there were three individuals. As the police were arriving, the police airplane told the police on the ground that the third individual had gotten into a truck and was driving away and that the two other individuals had returned into the house and returned into the house. So the idea was that the laser was being pointed from somewhere outside the house. Yes, laser strike was coming from somewhere outside the house. Okay, either from the front porch or from the streets. Okay. Um, I mean, why wasn't the district court didn't make a finding one way or another about whether it was a Fourth Amendment violation? Did she? I would. Well, no, she did not explicitly address the Fourth Amendment violation issue. Why? Why didn't they? I mean, I assume they violated the Fourth Amendment because they went to his house and arrested him without warrant. Um, so I assume that there was that type of Fourth Amendment violation existed. Um, but on the question of probable cause, I guess I'm not. I'm not quite quite sure why they didn't have probable cause, given the facts that you just described to believe that he had committed this crime because I think at best they knew that there were three people involved in that. Perhaps he may have been one of the three people involved, but that's it. I don't think that that equates to. So, so, Captain, if they've gone, if they've gone to the door, knocked on the door, but Charnikov had come to the door and they said, We're we're looking. We're investigating an incident involving a laser and a and a and a an airplane. And what Charnikov said? Yeah, it was me. Uh, then you wouldn't be here. Uh, yeah, I would agree. I wouldn't be here. Yes, there would be neither a Fourth Amendment violation or a Fifth Amendment violation. I would agree with that. Yes, but I think that there were both Fourth Amendment and Fifth Amendment. There's a second Fourth Amendment violation that occurs when they tell him that they are going to take the laser pointer on. He acquiesces to that demand and turns over the laser point. So there's actually two Fourth Amendment violations that occur. Um, I want to address some of the factors, and I want to start with the factor that the government relies on most heavily. And I want to say two things about the lapse in time. Of course, as this court is recognizing the United States v. Shetler, the relevant question for attenuation and analysis is not how... I'm very sorry to interrupt, but if I could just ask one more follow up question about the things that Judge Bybee and I were discussing. Um, doesn't it matter a great deal whether there, in fact, was probable cause? Because if it were, if it was only a Miranda violation that occurred at the house, um, then I think you, I think it becomes an easy case, right? We don't, we don't get into the, you know, the fruit of the poisonous tree analysis. Um, and only if there was a Fourth Amendment violation, and I think probably only a particular type of Fourth Amendment violation, namely an arrest without probable cause, do we, are we required to conduct this, this taint analysis that you're asking us to conduct? I would agree that if it was purely a Fifth Amendment violation, there is not the sort of fruit of the Miranda Fifth Amendment violation. If it was a due process violation, if it was a coerced confession, then of course we would have to conduct the analysis. But if it was, it's just Miranda, then, then we don't need to conduct that analysis. You agree with that? Yes. However, I would also argue that there was some element of coercion here when they told him, uh, look, after he denied pointing the laser and they placed him in handcuffs, we are only here to get the laser. That was an implied promise of either non-prosecution or leniency. So there is an element of coercion that occurred, uh, in the first interrogation. But you wouldn't say that this was a, this was a coerced confession in violation of the due process clause, would you? Well, the Court has gone, the Supreme Court has gone back and forth on whether or not coercion is a due process issue or more of just a Fifth Amendment incrimination issue. But I would argue that when a, the police say, uh, we're just here to seize the laser and that's what prompts them to turn the laser over, that's an implied promise of non-prosecution. So I would argue, yes, it was coerced. Okay. Miss, can I, and I, I know we're going into your rebuttal time, but we'll make sure you have some rebuttal. But even if it is only a Fifth Amendment, you know, didn't give him a Miranda warning, isn't it a fruit of that, that, that he, they, uh, A got a confession from him and, um, and, and B got the laser from him, you know, because it was, it was as after they'd gotten the confession that they actually got the laser from him. And once he said that I pointed a laser, it makes sense. He'd give him the laser. Yes. I mean, well, I think there's two, there's a Fifth Amendment violation when they interrogate him and he says, yes, I pointed the laser. And then there's a second Fourth Amendment violation unrelated to the arrest without probable cause, which is then demanding the laser from him, uh, and him merely acquiescing without valid consent. Um, so, so I, I think there were multiple violations and I know I'm running out of time. I wanted to address the time factor, uh, labs in particular. Um, but I can do that on rebuttal if the court wants. Oh, go ahead. Go ahead and take 30 seconds and tell us what you think. I want to say two things about that. And the first thing is that in Shetlar, uh, United States v. Shetlar, the court held that the relevant question for attenuation analysis is not how much time has passed, but whether the passage of time would have in any way dissipated the defendant's perception that the searches had produced evidence such that remaining silent would be useless. And in fact, the Shetlar court referred to Wayne, uh, Wayne, to Wayne Lafave, who observed that the Brown temporal proximity factor is a virtually no significance when evaluating, evaluating whether a confession that involved in an illegal search or arrest, uh, is admissible. So the, the one factor that the government relies on most heavily in this case, that the lapse of time, this court has already said is not significant. And given that nothing significant happened between the initially legality and the second interrogation eight months later, such as him being arraigned in front of a magistrate and being provided, uh, Miranda rights. I think, I think we have, yeah, we understand that. We understand your we'll get, we'll give you, um, some, some time for rebuttal, but let's go ahead and hear from the government's lawyer. Thank you. May it please the court, Peter Sachs for the United States. The facts of this case are not in dispute, nor is the law. The district court properly applied the three-part Brown test when it found that the initial illegal conduct was attenuated and that defendant's subsequent confession was the product of his own free will. Turning to the first of the three factors in the Brown test, it seems like some time dispute is what was the nature of the constitutional violation in the first encounter. Do you want to have this question about that? Yes, the government did not dispute that there was constitutional violations in the initial encounter and that the police acted unlawfully. Uh, the government did not argue in front of the district court that there was probable cause. Uh, and even if there had been, uh, defendant's confession, uh, was, was without Miranda after he was handcuffed and had been brought out onto the porch. Uh, and then there's the fourth amendment violation of the seizure of the laser pointer, which was the result of the, uh, confession. So you're, you're, you agree with, with, uh, Mr. Husby that there was not probable cause to, uh, arrest Mr. Bocharnikoff, um, at that time. Government concedes it didn't make that argument before the district court. Turning to the lapse of time, uh, the government notes, uh, that the defendant is unable to cite any cases that stand for the proposition that a lapse of time of eight months is insufficient to attend. Let me ask you about that. You said a lot of cases about the lapse of time. How many of those cases involved not Mirandizing the person before the second, uh, discussion or interrogation or whatever you want to call it? Uh, I don't believe any of them. Uh, this is all involved in Miranda. They all involved in intervening Miranda warning, correct? That's correct. So I want to ask you a followup question. What's your mind doing right now? You're thinking about what has got, has happened already in this, uh, argument time. And you're trying to think, what is judge Van Dyke going to ask me about what has already been asked? And that's exactly what Mr. I apologize. I can't say his name. Bocharnikoff was thinking when the agent walked up to him eight months later and said, I want to ask you some followup questions. So I, I'm really, if you don't mind, I'm really struggling with the idea that this, this concept that's in the briefing, that this wasn't tied to the earlier interrogation. It seems to me that he immediately tied it to the prior interrogation. When he said, I want to ask you some followup questions, just a followup question to judge Bivey's excellent questions earlier. I've just tied. I think there's an important distinction and it goes to the second of the three brown factors and that is the intervening events. And here, when agent Hoover approaches Mr. Bocharnikoff, he asked specifically, could I ask followup questions about the laser strike last summer? He doesn't. What do you think his mind went to? His mind went to sitting in his underwear on his porch, still wet with the agents asking him some very aggressive questions. And he had no reason to think that it was just as any sort of different questioning because he hadn't been given an intervening Miranda warning. That's the thing that, that, the thing that really, that two things that really make this difficult for me, make your arguments difficult for me to accept are the fact that he specifically tied it to the earlier questioning. And when you say, I'm going to ask you followup questions, you're not just asking, you're not just asked saying, I want to refer to this thing that happened before. You're saying, I want to ask, you're, you're referencing the fact that there were questions related to the thing before. It would make no sense to say. So I don't think that quite works. Um, the way you said, I think he's, I think by virtue of saying followup questions, he's tying it to the earlier questioning, but then not having a Miranda warning. He had no reason to think when the agent came up to him that this was that, that he wasn't being told, you know, I could use what you're about to tell me against you. And then the third thing is, and we don't even talk about it yet, but the fact that the intervening 88 months, he had been told that they just wanted a laser pointer. So in this particular case, the eight months actually confirmed for him what he had been told by them. So that those are all very difficult facts, I think for you. Sure. I'll take the last point first. Uh, initially they told him that they just wanted the laser pointer, but after the initial event, they seized the Hoover approached Mr. Botanik off. It couldn't be that that initial interaction was complete. Uh, was was just related to laser pointer because or certainly reprised when Agent Hoover approached Mr. Botanik off. It had to be a new. I see your point. I know what you're saying. But let me all of us on this on this argument, all five of us. If an FBI agent walks up to us to ask us about something, we would be like, Hmm, you've already got the laser pointer. Something else is up. But your average person doesn't necessarily think that at least that seems to me the implicit premise built into Miranda, right? Is that that's why people have to have Miranda warnings is because when the agent walks up to him, especially in a friendly, non threatening manner after the earlier one was a little little fierce, it sounds like it's not. It seems like if you don't have that Miranda warning, you don't. Um, you could be an adversary that he could get something from you. That's built into it, isn't it? Well, I think it's undisputed that the second encounter is not a custodial interrogation, and that Agent Hoover had no obligation to give Mr. Botanik off a Miranda warning. You seem to be. Go ahead, Judge. Sorry. Go ahead. Well, I just say, you know, if we were to rule that this is appropriate, why wouldn't why wouldn't somebody who clearly violate somebody's fourth or fifth or and fifth of them rights law enforcement? Why wouldn't they just say, Okay, here's what we'll do. We'll come back in six months in a friendly encounter, not give him around a warning. They've already given us the confession. Your average person's gonna take the cats out of the bag and just give the second. It seems like you create some real perverse incentives. I'm not saying that that Agent Hoover was necessarily trying to do anything wrong here, but we would be creating some perverse incentives. That kind of way. I think there's an important distinction between the facts here on the facts in Missouri versus Siebert, where law enforcement was purposely using sort of a two step interrogation where they would get someone to confess, and then after the fact, they would Miranda eyes them and then re asked the same questions. And that's also important. This is worse. There's no there's no Miranda at all. Like, I don't know. But there's no Miranda the second time around because there's no custodial interrogation, nor is the government aware of any case law that supports the proposition that law enforcement is obligated to give a Miranda warning when the person isn't in custody. But I think and I mean, I think you're right that under these circumstances, Hoover. Yes. Agent Hoover, you know, under the circumstances, he didn't have to give the Miranda warnings. But what what is getting at is that that may hurt you in this case, because the if he had been in a situation where he was required to give Mr Borchonikov the Miranda warnings that would have helped kind of distance the prior encounter from from this one. And maybe it's sort of Agent Hoover didn't have to give the warnings in this case, but but but that might be to your detriment with respect to the taint issue. And so yes, and violate Miranda. But he but but he did because he didn't give him the Miranda warnings and because he wasn't required to give him the Miranda warnings. He did not have occasion to create a greater disconnect between the initial unlawful interrogation and and the new encounter. Sure. So in Oregon versus Elstad, the defendant argued that the confession was unsound because the law enforcement officer failed to argue that the prior confession was unlawfully obtained. And the court in Elstad said that requiring such notice is neither practical nor constitutionally necessary. Now, even if there were such a requirement here, imagine Agent Hoover was obligated to notify Mr Borchonikov that the prior confession was it's hard to interrupt. I just want to make clear I'm not I'm not regardless of whether he was obligated to notify him of the that the prior his prior confession was unlawfully obtained. That's not where I was going. Where I was going is we have this constitutional violation. I think if we assume that it was a constitutional violation was a Fourth Amendment violation, arrest without probable cause, then we have to conduct this analysis of whether the you encounter is tainted by the prior constitutional violation. It's sort of an unfortunate happenstance for the government in this case that Mr Borchonikov didn't get his Miranda warnings again, I think is the point. And I'm not saying that that necessarily that Agent Hoover did anything wrong. It sounds like everybody agrees he's a very nice guy. But but in terms of taint, you know, that that that seems to hurt your argument. Yeah, if I could, if I could, I think that Chabria has said it very well. If I could give an illustration of what I think illustrates what at least my concern is, is he if they had done what they did, all the law enforcement and they got the laser pointer, they all got in their cars and they drove off. And five minutes later, Agent Hoover pulls up and Mr Nice guy and his in his FBI suit and everything and, you know, not a swap gear or whatever. And he and he said, and he did what he did. We would all say it doesn't matter. I mean, the taint wasn't attenuated, right? And your argument is essentially completely depends, it seems to me, on the fact that eight months happened in between. But the fact that he never was told the fact that he was told by the first people that we just want the laser pointer that nothing ever happened in those eight months and  went by. It's really not that different, especially when the agent drives up. And the first thing he says, I want to ask you some follow up questions tying it right away to that. And we know he did that, right? Because he because Mr Bertrand, a cop immediately starts to I'm sorry. I'm sorry. You know, he immediately and he mentioned himself. He immediately goes back in his mind. I think Agent Hoover has to be able to frame the issues that he wants to return a cop. So he needed to begin the encounter by explaining why he was there. But he was careful not to mention the prior confession, not to mention the seizure of a laser pointer. Is that really true? Counsel? I mean, is that really true that you guys say that everything didn't mention the prior confession early? He did mention in the prior questioning. He did, didn't he? By saying by saying, I want to ask you some follow up questions that is mentioning the prior questioning, isn't it? It's a reference to the prior episode, and I believe it's a finding of the district court that the agent did not mention the 2017 confession or the seizure of the late employee. Well, judges, you have it. Thank you very much. Counsel. This is a challenging case. Do you have any other questions? No. So, Mr Husby, we'll give you a minute and a half. Thank you. So just briefly, clearly he referred to the prior illegalities, even if he didn't refer to the interrogation, he referred to the laser, which was unlawfully seized. And Mr. Pocharnikoff, as Judge Van Dyck has pointed out, clearly took it that way because he immediately began apologizing for having lied initially to the police and explaining why he did that. In terms of whether or not Miranda rights were agreed, they weren't, and there's no independent Fifth Amendment violation that occurred during the second interrogation. But interestingly, in Wong Sung, Mr. Wong Sung voluntarily returned to the police station to give a confession, was not in custody, and although it was pre-Miranda, was told he had a right to remain silent, something that was never told to Mr. Pocharnikoff. So merely because he wasn't in custody doesn't mean the alternative or different tax for suppression here is the exploitation analysis. At this point in Chamberlain, where the prior illegal activity tends to significantly direct the investigation to the evidence in question, generally attenuation will not be found. There's no question in this case that the prior illegalities directly led Agent Hoover back to Mr. Pocharnikoff in the confession, because as he testified after interviewing the he concluded that it was likely inadmissible and he needed to go do a second. How much do we know? How much Hoover knew? Hoover testified that he interviewed the police about what occurred. I asked him why he had to go back for a second interrogation, and he said that is because he concluded that the first interrogation was legally problematic. Okay. All right. Well, thank you. Council is very helpful argument this morning. Any other questions? Judges? Thank you. Okay. All right. Well, this is our This is our final case of the morning. Uh, it will be submitted on an argument.
judges: Bybee, Vandyke, Chhabria